William J. TURPIN, Respondent,

v.

Clifford J. ANDERSON,
et al., Appellants.

No. WD 53596.

Missouri Court of Appeals,
Western District.

Submitted Sept. 4, 1997.

Decided Nov. 10, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 23, 1997.

Application for Transfer Denied
Jan. 27, 1998.

Chris L. Thompson, Kansas City, for appellants.

Max Von Erdmannsdorf, Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

SMART, Judge.

Clifford and Joan Anderson appeal from a judgment awarding $46,000.00 in attorneys' fees to William Turpin. The Andersons claim that the trial court erred in submitting the case to the jury because, they claim, the evidence shows that Mr. Turpin abandoned their cause, thus forfeiting his right to recover in contract or in quantum meruit. They also contend that the trial court erred in entering judgment in the amount of $46,-000.00 because the amount exceeded the permissible quantum meruit recovery and was improperly based on Mr. Turpin's hourly rate. Because the evidence supports a finding that Mr. Turpin did not abandon his client's cause, and because the record shows that the amount of the verdict was supported by the evidence, the judgment is affirmed.

This case is an appeal of a judgment entered on a jury's verdict. In such a case, we consider the evidence in the light most favorable to the verdict below. *Martin v. Durham*, 933 S.W.2d 921, 925 (Mo.App.1996). We do not determine the credibility of witnesses, resolve conflicts in testimony, or weigh evidence. *Brandt v. Csaki*, 937 S.W.2d 268, 273 (Mo.App.1996).

In 1969, Clifford and Joan Anderson purchased a tract comprised of approximately three acres of real property at a tax sale for $79.23. The property that they purchased was located on the west side of the North Broadway Extension in Kansas City, Missouri. Because of its location near the well-traveled road, it was a possible site for a commercial billboard. However, the tract was completely landlocked, and no previous owner had been able to develop it in any way.

The Andersons did nothing with the property for many years. The city owned the property surrounding the tract, and the city would not permit the Andersons access across its property. The Andersons entered into a contract with 3–M Sign Company, but eventually the contract was terminated because the sign company could not get lawful access to the property.

In 1982, the Andersons retained an attorney to file a petition to establish a private road. Mr. Anderson had been unsuccessful in obtaining access to the property across land occupied by the Water Department. According to Mr. Anderson, the Water Department was denying that Anderson's property even existed. The attorney hired by Anderson filed a petition, but then, for reasons not made clear in the record, withdrew from the case in February of 1985, after having been paid a total of $250.00 in attorney fees.

The Andersons retained William Turpin, a Clay County practitioner, to prosecute the private road litigation further. They requested that Mr. Turpin take the matter on a contingency basis. Mr. Turpin familiarized himself with the matter and then filed an amended petition on behalf of the Andersons in March of 1985. On April 23, 1985, Mr. Turpin mailed a letter to the Andersons outlining a contingency fee agreement, just as the Andersons had requested. Mr. Turpin offered to pursue the matter in return for a fee equal to fifty percent of the increase in value of the property resulting from his efforts.

At a meeting at Mr. Turpin's office on May 22, 1985, Mr. Turpin explained to the Andersons the work to be done to get a roadway to the property and to get a sign permit so that a commercial billboard could be constructed on the site. The Andersons signed the letter agreement providing for the fifty percent contingency fee.

Because the land was located near city water facilities, Mr. Turpin had to deal with the Water Department, the Planning Department, the Flood Plain Department, the North Kansas City Levee District, and city attorneys in an effort to get a private road installed and to get permission to put up a sign. Mr. Turpin also continued to litigate while his negotiations were on-going. He assisted with responses to interrogatories and handled other discovery matters. In its answer, the City filed a counterclaim claiming trespass and unlawful cutting of timber because of an earlier incident related to an attempt to put a sign on the property. The City sought triple damages. Turpin filed an answer to the counterclaim. Mr. Turpin appeared at each docket call on the matter. In the process of negotiations, Mr. Turpin and the City's attorney agreed to allow the claims on both sides to be dismissed in 1988, because the parties were close to settlement and the court was pressing the parties to try the case. It was understood by the City and Mr. Turpin that each side would refile an action if a settlement were not reached. Consequently, the case was dismissed in 1988.

During negotiations with the City, it became apparent that a survey would be needed in order to determine the precise boundaries of the property owned by the Andersons. It was anticipated that the survey would cost an amount between $5000.00 and $8000.00. The Andersons did not have the money to fund such a survey. Mr. Turpin believed that the City would be required to have the property surveyed because of its need for an easement, so Turpin recommended waiting for the City to obtain the survey. Eventually the City did have the property surveyed. The City also had an appraisal done on the property.

In the meantime, it had come to Mr. Turpin's attention that the Collector's deed issued to the Andersons contained a legal description which was erroneous—describing a tract of land under the Missouri River rather than the tract in question. Mr. Turpin successfully persuaded the Collector to issue a new deed with the correct description. Mr. Anderson, meanwhile, had somehow formed the belief that he owned the land under the southbound lanes of the Broadway Extension. He urged Mr. Turpin to sue the City. Mr. Turpin persuaded the Andersons that such an action would be ill-advised.

The value of the land, of course, depended upon its use as a site upon which to place a billboard. In 1988, anticipating an agreement with the City, the Andersons entered into an agreement with Odegard Outdoor Advertising ("Odegard") which allowed Odegard to erect a sign on the property pursuant to a temporary sign permit. The agreement provided for a ten-year term and gave Odegard an additional ten-year option to renew. Odegard began paying rent to the Andersons in 1988 in the amount of $1000.00 per month, but ceased paying rent a few months later when its sign permit was withdrawn. Construction of the sign had not begun when Odegard received notice from the City that the permit had been put on hold. The Andersons, in accordance with the contingency agreement, paid Mr. Turpin one-half of the amounts received from Odegard during this period, which amounted to $1,750.00.

During the course of negotiations, the City offered several times to purchase the land.

The Andersons declined the City's offers. In 1989, the City agreed that it would grant access to the property to the Andersons and, in return, the Andersons would allow the City a sewer easement across the property. The City initially offered the Andersons $5,000.00, but the Andersons declined the offer. In the meantime, Turpin continued to negotiate with the City for a higher cash payment for the Andersons.

In March of 1990, the City proposed that the Andersons quitclaim the property to the City with the City later quitclaiming the property back to the Andersons, less land for the sewer. The City increased its offer for the sewer land to $20,000.00. All the necessary documents and instruments were delivered to a title company for execution. The Andersons, however, declined to sign these documents. Mr. Anderson testified at trial that he thought he had "leverage" over the City. Mr. Turpin advised the Andersons that if they turned down the City's offer of $20,000.00 and the City formally condemned the easement, the Andersons probably would not receive more than a few hundred dollars out of the process. Instead of executing the documents, the Andersons notified Mr. Turpin they were terminating the attorney-client relationship. They provided no reason for their action in terminating Mr. Turpin.

After the City began formal proceedings to condemn a sewer easement, the Andersons engaged another attorney. The matter extended through formal condemnation proceedings and the Andersons were ultimately awarded $300.00 for the sewer easement, just as Mr. Turpin had predicted. The Andersons then entered into an agreement similar to the one earlier negotiated by Mr. Turpin with the City providing for a private road so that a sign company could get to the sign. The difference between the agreements was that the later agreement did not include $20,000.00 for a sewer easement. The evidence failed to show that the benefits ultimately received by the Andersons from their legal maneuverings included any benefit which Mr. Turpin had not already made available through his efforts. The arrangement that the Andersons ultimately agreed to in 1994 was, in fact, patently inferior to

that negotiated by Mr. Turpin in 1990. Mr. Anderson conceded at the trial in the present case that he had "gambled and lost."

In June of 1991, Mr. Turpin billed the Andersons $10,000.00 for his services. The Andersons declined to pay. Turpin then brought an action against his former clients for compensation. Count I claimed breach of contract. Count II was an action on account. Count III was a claim of quantum meruit. The petition sought recovery of $16,500.00. By the time of trial, there was a commercial billboard on the property, and a sign contract under which the Andersons were being paid $12,000.00 per year. The cause was finally submitted to the jury on the theory of quantum meruit, and a verdict was entered in Mr. Turpin's favor in the amount of $46,000.00. The Andersons appeal.

## ABANDONMENT

█ In their first point, the Andersons contend that the trial court erred in allowing the case to be submitted to the jury because Mr. Turpin abandoned their cause, thereby forfeiting his right to recover in contract or in quantum meruit, when he allowed the lawsuit against the city to be dismissed for want of prosecution. The Andersons cite the general rule that when an attorney abandons or withdraws from a case without just cause before termination of the case and before the lawyer has fully performed the required services, he loses all rights to compensation for the services he had rendered. *International Materials Corp. v. Sun Corp. Inc.*, 824 S.W.2d 890, 894 (Mo. banc 1992). "Complete forfeiture, however, is warranted only when a lawyer's clear and serious violation of a duty to a client is found to have destroyed the client-lawyer relationship and thereby the justification for the lawyer's claim to compensation." *Id* at 895. The Andersons contend that Mr. Turpin's fee was contingent on "litigation" of the matter and that the dismissal of the action without a final agreement with the City was an abandonment of the cause. The Andersons also claim that Mr. Anderson did not keep them fully informed. The jury however, was not required to believe this testimony, which was disputed by Mr. Turpin.

The record refutes the Andersons' contention that Mr. Turpin abandoned their cause. The record also shows that forfeiture is inappropriate in the instant case. The jury could have found from the evidence that Mr. Turpin faithfully represented the Andersons' interests throughout negotiations with the City, both before and after the suit was dismissed. The evidence indicated that during his representation of the Andersons, Mr. Turpin, among other things, negotiated with various City officials and departments to reach a settlement that would allow the Andersons access to their property; obtained dismissal of a counterclaim brought by the City for trespass; obtained a corrected deed to the property; negotiated with the City concerning sign permits; and negotiated a settlement with the City that would have allowed the Andersons $20,000.00 compensation from the City for a sewer easement in addition to allowing the Andersons access to the landlocked property. Mr. Turpin testified at trial he had invested approximately 450 to 460 hours of work in the matter. There was testimony from the City's employees as to Mr. Turpin's efforts and as to the dedication which he gave in representing his clients. The right-of-way agent for the City Water Department, with whom Mr. Turpin negotiated as to the sewer easement, testified:

> I got to the point that I hated when Mr. Turpin called because all I could do was say, "this is what we have. This is all I can do on it. The bosses have to go higher on the money." I never—in the 13 years I was right-of-way agent for the Water Department, I never had an attorney so tenaciously represent a client as he did.

The evidence shows that it was the Andersons who terminated their contract with Mr. Turpin. The Andersons, dissatisfied for whatever reason with the service provided by Mr. Turpin, had the legal right to discharge Mr. Turpin and employ other counsel. *Plaza Shoe Store, Inc. v. Hermel,* 636 S.W.2d 53, 57 (Mo. banc 1982). However, this right did not negate Mr. Turpin's right, under certain conditions, to be paid his fee. *Id.* Mr. Turpin has the right to be paid his fee for services rendered up to the time of his discharge. *Roberds v. Sweitzer,* 733 S.W.2d 444, 447 (Mo. banc 1987).

The relationship between the Andersons and Mr. Turpin was, according to the Andersons, terminated before the completion of the contingent fee contract. Thus they do not claim the case should have been submitted on a contract theory. Mr. Turpin was, therefore, entitled to submit his claim in quantum meruit for benefits conferred. *International Materials,* 824 S.W.2d at 895. *See also Vogler v. Real Earth U.S. Enters., Inc.,* 907 S.W.2d 377, 380 (Mo.App.1995). In any event, the Andersons failed to show that Turpin abandoned their cause. The claim for quantum meruit was properly submitted. Point I is denied.

## QUANTUM MERUIT

The Andersons contend that the trial court erred in entering judgment in the amount of $46,000.00 because, they claim, the amount was excessive and exceeded the amount of quantum meruit recovery allowed for actions by attorneys in contingent fee cases. They also claim the amount was unreasonable in that no expert testified as to the reasonableness of the fees and the judgment was based upon Turpin's hourly rate rather than being based upon the value of any benefits conferred on the Andersons. The argument section of the Andersons' brief also contains claims of error that are not contained in their Point Relied On. They claim, for example, that the contingency fee contract was void because it was in violation of the Rules of Professional Conduct.[1] "A reviewing court is obliged to determine only those questions stated in the points relied on.

---

1. The Andersons argue that the contingency fee contract violated the Missouri Rules of Professional Conduct in that it purported to give Mr. Turpin an interest in the property at the conclusion of the litigation. Rule 1.8(j)(2), however, allows an attorney to acquire a proprietary interest in a cause of action "for a reasonable fee in a civil case." The case cited by the Andersons in support of their contention, *Shanks v. Kilgore,* 589 S.W.2d 318, 322 (Mo.App.1979), concerns a fee agreement contingent on a marital property distribution. Such a fee is forbidden by Rule 1.5(d) of the Rules of Professional Conduct. In this case, however, there is no indication that Mr. Turpin conducted himself in any way inconsistent with proper ethical standards.

Issues raised only in the argument portion of the brief are not presented for review." *State v. Williams,* 887 S.W.2d 769, 770–71 (Mo.App.1994). We also note that the issue presented by this point was not presented to the trial court at trial or in the Andersons' motion for new trial. Rule 78.07 provides, in pertinent part:

> In jury tried cases, other than cases tried with an advisory jury, allegations of error to be preserved for appellate review must be included in a motion for a new trial except that questions of jurisdiction over the subject matter, questions as to the sufficiency of the pleadings to state a claim or defense, and questions authorized by Rule 72.01 to be presented in motions for judgment need not be included in a motion for new trial.

The Andersons have not preserved this allegation for review. Rules such as 78.07 are designed to allow the trial court the opportunity to correct its errors without the delay and the expense of an appeal. *Bowman v. Burlington Northern, Inc.,* 645 S.W.2d 9, 13 (Mo.App.1982).

■■■■ The Andersons also contend that the award exceeds all bounds of reasonableness. An action sounding in quantum meruit is based upon a person's implied promise of reasonable and just compensation in return for the performance of valuable services, performed at that person's behest or with his approval. *Reid v. Reid,* 906 S.W.2d 740, 743 (Mo.App.1995). In order to sustain a claim for quantum meruit, the plaintiff must shoulder the burden of proving the reasonable value of services performed. *Id.* In making the determination of what constitutes a reasonable attorneys' fee, consideration is given to (1) the time, nature, character and amount of services rendered; (2) the nature and importance of the litigation; (3) the degree of responsibility imposed on or incurred by the attorney; (4) the amount of property or money involved; (5) the degree of professional ability, skill and experience that was called for and used; and (6) the result that was achieved. *Id.* Recovery is limited to "the reasonable value of services rendered, not to exceed the contracted fee, and payable only upon the occurrence of the contingency...."

*Plaza Shoe,* 636 S.W.2d at 60. In addition, a client should not have to pay for duplicative service, and, as in all cases relating to quantum meruit, the services must have enriched the client in the sense of benefits conferred. *International Materials,* 824 S.W.2d at 895.

■■■■ Looking at the above factors, we conclude that the evidence supported a substantial sum as being Mr. Turpin's reasonable fee. The attorney-client relationship between the parties lasted five years. Mr. Turpin testified that he had put in an average of 8 to 10 hours per month for those five years working on the Andersons' affairs, totaling approximately 450 to 460 hours. Turpin testified that in his opinion the contingency fee contract was fair and reasonable in light of the time he estimated that he would have to spend on the matter. He also testified that his usual hourly rates were often $90.00 to $100.00 per hour. He also described the work he had done on the matter, although he did not have formal written itemizations. The record indicates that he spent many hours on telephone calls and trips to Kansas City in order to work out an agreement with the City concerning the landlocked parcel of land, the sewer easement, the deed description, and the sign permits. Rather than showing that he was ineffective, the record supports the conclusion that Mr. Turpin was effective in the legal endeavors he undertook.

■■■■ The Andersons nevertheless argue that the amount awarded Mr. Turpin was unreasonable because no expert testimony was presented as to the reasonableness of the fees. This argument was not presented to the trial court in the Andersons' motion for new trial. Consequently, this argument is not reviewable. Rules 84.13(a) and 78.07. The Andersons also argue that the value of the land cannot be used in considering the value of the contingency fee contract. They refer to the value of the land as "unliquidated" because, they contend, no judicial determination was made as to the exact value of the land. However, there was evidence that the City appraiser had valued the land as worth $263,000.00 with a private road and a sign permit, and as worthless without those items. This testimony was received without

objection by the Andersons. Mr. Anderson also acknowledged at trial that the appraised value of the land was approximately $260,-000.00. By the time of trial, the property, which was formerly worthless, was producing rental income for the Andersons in the amount of $12,000.00 per year under a contract that provided for a minimum period of 10 years. In light of all the evidence, $46,-000.00 was within the range of the evidence as the reasonable value of Mr. Turpin's services.

### HOURLY RATE TESTIMONY

■ The Andersons contend that a recovery in quantum meruit cannot be based solely on testimony as to one's hourly rate. They did not object to Turpin's testimony; therefore, they do not complain about the admission of the hourly rate testimony. They contend only that such testimony cannot support the verdict. We need not address whether the hourly rate testimony, standing alone, could support the verdict in quantum meruit because there was other evidence sufficient to support the verdict. It is possible, as the Andersons speculate, that the jury multiplied Mr. Turpin's hourly rate of $100 by the amount of time he had invested in the matter to arrive at $46,000.00. We know of nothing which precludes the jury from considering such factors in a quantum meruit case when the information has been received in evidence without objection. We are entitled to consider the evidence presented, even evidence which might have been excluded upon objection if an objection had been made, in determining the sufficiency of the evidence. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 863 (Mo. banc 1993). We presume the jury considered all of the evidence in arriving at its verdict, *Trask v. Davis*, 297 S.W.2d 792, 800 (Mo.App.1957), not merely Turpin's hourly rate. We review only to see if the verdict is supported by the evidence, and here we conclude that it was.

The Andersons also contend that Mr. Turpin's services duplicated some of the services performed by Odegard and that the judgment was not based on the value of the benefits conferred. Review of the record, however, reveals that the Andersons' contentions are without merit. There was evidence from which the jury could find that Mr. Turpin's representation of the Andersons resulted in substantial benefit to them. The evidence did not require a finding of duplication of effort by Mr. Turpin or that he provided the Andersons with unnecessary services. Point II is denied.

Judgment is affirmed.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.