**Philip M. KOPPE, Appellant,**

v.

**John R. CAMPBELL, Jr., et al., Respondents.**

**No. WD 70716.**

Missouri Court of Appeals, Western District.

June 22, 2010.

Application for Transfer to Supreme Court Denied July 27, 2010.

Application for Transfer Denied Sept. 21, 2010.

George A. Barton, Robert G. Harken, The Law Offices of George A. Barton, P.C., Kansas City, for appellant.

Nathan C. Harbur, Nathan C. Harbur, Chartered, Michael W. Blanton, Leawood, KS, for respondents.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA A. MARTIN, Judge.

JOSEPH M. ELLIS, Judge.

Philip M. Koppe appeals from a judgment of the circuit court of Jackson County granting the Respondents' motion for judgment notwithstanding the verdict (JNOV) and alternatively granting the Respondents' motion for a new trial. For the following reasons, we reverse the trial court's judgment.

This case involves a claim under quantum meruit for legal services Koppe provided to the Respondents, John R. Campbell, Jr., Leon A. Howell, and Grand Avenue Developers, L.L.C.[1] Campbell and Howell, as the sole owners, investors, and shareholders of K.J.C. Development Corporation (K.J.C.), purchased land on the corner of 10th Street and Grand Avenue in Kansas City at a tax foreclosure sale. At the time of the sale, a seventeen-story office was located on the land and Campbell and Howell became involved in a long legal battle with the Land Trust of Jackson County (Land Trust) over ownership of the building. Both K.J.C. and Land Trust contended they were the fee simple owners of the building.

After an unfavorable ruling was issued against Campbell and Howell in trial court, they sought the services of Koppe. Campbell, who was an attorney with his own practice and who acted as general counsel for K.J.C., knew Koppe, was familiar with his extensive appellate experience, and had previously retained Koppe's services on appellate work. Koppe was an attorney with the Missouri Attorney General's office at the time, who had worked on approximately 1,500 criminal appeals. Koppe agreed to help Campbell with the appeal and ultimately assisted Campbell in all phases of the appeal, including drafting the following: (1) the brief for the Missouri Court of Appeals, (2) a response to the Land Trust's motion to dismiss, (3) two amended briefs for the Missouri Court of Appeals, (4) a motion for rehearing, (5) suggestions in opposition to Land Trust's request to clarify issues on rehearing, (6) a

---

1. Although there was contrasting evidence presented regarding who Koppe provided services to, as well as other issues at trial, we view the evidence in the light most favorable to the jury's verdict and give the prevailing party all reasonable inferences from the verdict while disregarding the unfavorable evidence. *Hodges v. City of St. Louis*, 217 S.W.3d 278, 280 (Mo. banc 2007). Accordingly, we summarize the facts herein in the light most favorable to Koppe.

second motion for rehearing, (7) an application for transfer to the Missouri Supreme Court, and (8) the substitute brief for the Missouri Supreme Court. Although Koppe's name did not appear on the briefs or motions and Koppe did not present oral arguments, Koppe estimated that he spent a total of 640 hours on the appeal. The ultimate result was a favorable judgment by the Missouri Supreme Court awarding fee simple title of the building to K.J.C. *K.J.C. Dev. Corp. v. Land Trust of Jackson County*, 6 S.W.3d 894, 897 (Mo. banc 1999).

K.J.C., Campbell, Howell, and Koppe did not enter into any written agreement regarding Koppe's legal services. Nonetheless, the parties agreed that Koppe would only be paid in the event that the appeal was successful and only after the building was sold. Following the Supreme Court ruling in 1999, Campbell and Howell undertook to sell the building. However, due to non-interest in the area and the dilapidated condition of the building, it took five years and additional investments by Campbell and Howell for the building to sell.

Ultimately, in November 2004, the building sold for $3.3 million. Prior to the sale, K.J.C. had transferred the building to a new entity, Grand Avenue Developers, which Campbell and Howell created for tax purposes. Following the sale of the building, Campbell and Howell disbursed earnings to themselves, leaving $32,000 in Grand Avenue Developers. Campbell believed this amount would be sufficient to provide Koppe with payment for his services.

On November 17, 2004, Koppe wrote to Campbell, congratulating him on the sale of the building, and requesting that they determine an amount of payment. Campbell and Howell offered Koppe $15,000 but Koppe told them that the offer was not sufficient and he believed he was due $625,000, plus interest. Finally, on January 31, 2007, Koppe filed a petition for damages against Campbell and Howell. On October 31, 2008, a jury in Jackson County returned a verdict in favor of Koppe for $150,000.

The Respondents filed a motion for JNOV and alternative motions to amend the judgment or for a new trial. After a hearing, the trial court granted Respondents' motion for JNOV on the ground that Koppe's claim was time barred. In the alternative, the trial court granted Respondents' motion for a new trial on the grounds that Koppe was unable to establish the fair and reasonable value of his legal services and the court committed error in submitting an instruction which allowed the jury to award Koppe prejudgment interest. This appeal follows.

 We review the granting of the alternative motions for JNOV and for a new trial applying different standards of review. "Essentially, a JNOV motion is a challenge to the submissibility of the case." *Kinetic Energy Dev. Corp. v. Trigen Energy Corp.*, 22 S.W.3d 691, 697 (Mo.App. W.D.1999). We review a trial court's grant of a motion for JNOV *de novo* and must determine whether the plaintiff made a submissible case. *Jones v. Sherman*, 857 S.W.2d 468, 471 (Mo.App. E.D.1993). "To make a submissible case, a plaintiff must present substantial evidence that tends to prove the facts essential to plaintiff's recovery." *Ryan v. Maddox*, 112 S.W.3d 476, 480 (Mo.App. W.D.2003) (internal quotation omitted). We view the evidence in the light most favorable to the jury's verdict, and give the prevailing party all reasonable inferences from the verdict while disregarding the unfavorable evidence. *Hodges v. City of St. Louis*, 217 S.W.3d 278, 280 (Mo. banc 2007). "A presumption exists favoring the reversal of a

JNOV." *Kinetic Energy,* 22 S.W.3d at 697. Nonetheless, we will affirm the trial court's ruling if the trial court's ruling was "proper for any reason, even if its assigned grounds were wrong." *Lindquist v. Scott Radiological Group, Inc.,* 168 S.W.3d 635, 644 (Mo.App. E.D.2005).

 Regarding motions for new trials, the trial court is vested with broad discretion when ruling on these motions. *Steele v. Evenflo Co.,* 147 S.W.3d 781, 786 (Mo.App. E.D.2004). However, the trial court's power is discretionary only regarding fact questions, not questions of law, and the burden is on the appellant to prove that the trial court abused its discretion when it granted the motion for a new trial for the stated reasons. *Id.* Further, "[w]hen reviewing the grant of a new trial following a verdict in favor of plaintiff, we view the evidence and all inferences in the light most favorable to plaintiff." *Id.* "When a trial court grants a new trial on a specified basis, that ruling constitutes an overruling of all other grounds asserted by the movant in its motion for a new trial." *Andersen v. Osmon,* 217 S.W.3d 375, 378 (Mo.App. W.D.2007) (internal quotation omitted). "On appeal from an order granting a new trial for a specific reason the burden is on appellant to show that the court erred in sustaining the motion upon the ground specified." *Id.* (internal quotation omitted). "The respondent has the burden to show if other grounds in the motion are sufficient to grant a new trial." *Id.*

Thus, we must consider all grounds raised by the Respondents in their JNOV motion, but are only required to consider the grounds raised in the Respondents' motion for a new trial if the Respondents demonstrated those grounds are sufficient to grant a new trial. Accordingly, we start our inquiry examining the trial court's judgment and the reasons provided therein for granting the Respondents' motions.

## Statute of Limitations

In their motion for JNOV, the Respondents asserted that Koppe's action was time barred because Koppe last performed services for the Respondents in October 1999 but did not file suit until January 2007, more than seven years after the date he last provided services. The trial court agreed with Respondents' contention and granted JNOV on that basis.

Section 516.120 limits "[a]ll actions [except those specified in § 516.110] upon contracts, obligations or liabilities, express or implied" to five years.[2] While the parties agree that the five-year statute of limitations applies, they disagree as to when the statute of limitations begins to run.

 The general rule is that the statute of limitations will accrue "when the damage resulting therefrom is sustained and is capable of ascertainment." *§ 516.100.* "[T]he capable of ascertainment test is an objective one." *Powel v. Chaminade Coll. Preparatory, Inc.,* 197 S.W.3d 576, 584 (Mo. banc 2006). Damage may be ascertained "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *State ex rel. Marianist Province of U.S. v. Ross,* 258 S.W.3d 809, 811 (Mo. banc 2008) (internal quotation omitted). Thus, "the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" *Id.* (quoting *Powel,* 197 S.W.3d at 584).

2. All statutory citations are to RSMo 2000, unless otherwise indicated.

The Respondents cite *Coburn v. Leon Industries, Inc.,* 764 S.W.2d 510 (Mo. App. E.D.1989) and *Estate of Cates v. Brown,* 973 S.W.2d 909 (Mo.App. W.D. 1998), as support for the general proposition that a five-year statute of limitations applies to quantum meruit claims and argue that Koppe's claim is time barred because it was filed more than five years after he finished providing legal services. The Respondents also rely on *E.J. Vitello Plumbing, Inc. v. Wayne M. Roberts, Inc.,* 955 S.W.2d 222, 223 (Mo.App. E.D.1997), in which the Eastern District of this Court held that the damages were capable of ascertainment when the client was billed with an invoice. However, none of these cases provide any guidance on how to determine when the statute begins running when parties have agreed to postpone payment until certain conditions are met. Here, the parties agreed payment would not be due until a favorable ruling was entered on appeal and the building sold. None of the cases cited by the Respondents address when the statute of limitations accrues under these conditions.

Viewing the evidence in the light most favorable to Koppe, it was not reasonably possible that Koppe was put on notice of a potentially actionable injury until after the building sold and he was not paid. Since the accrual of the statute of limitations commences on the date the damages were sustained and capable of ascertainment, the statute could not have began to run on the date that services were last rendered by Koppe due to the specific agreement between the parties. Although the Respondents contend that Koppe could have valued his services prior to the sale of the building, Koppe could not have known there would be an injury resulting in damages until after the building sold and he was not paid. Any action by Koppe prior to the sale of the building would have been premature and prior to any injury Koppe suffered. Therefore, the trial court erred in finding Koppe's claim time barred and granting Respondents' motion for JNOV on that basis because the statute of limitations did not begin to accrue until after the building was sold in 2004. As noted *supra,* Koppe filed his suit on January 31, 2007, well within the five year statute of limitations.

## Reasonable Value of Services

We next address Koppe's claim that the trial court erred in its alternative ruling granting the Respondents' motion for a new trial on the basis that Koppe failed to establish the reasonable value of his services.

In order to make a submissible case in quantum meruit, Koppe was required to present substantial evidence proving the following: that he provided the Respondents with services at the request of the Respondents or with their acquiescence; that those services had a certain reasonable value; and that the Respondents, despite demands by Koppe, have failed and refused to pay the reasonable value of those services. *Moran v. Hubbartt,* 178 S.W.3d 604, 609 (Mo.App. W.D.2005). "Recovery in quantum meruit for services performed is limited to the reasonable value of the services." *Id.* at 609–10 (internal quotation omitted). "The reasonable value of services is the price usually and customarily paid for such services or like services at the time and in the locality where the services were rendered." *Id.* at 610 (internal quotation omitted). However, a community standard is not an essential aspect of reasonableness, and, in some cases, the plaintiff's testimony alone is sufficient to establish the reasonable value of the plaintiff's services. *Richard B. Curnow, M.D., Inc. v. Sloan,* 625 S.W.2d 605, 607 (Mo. banc

1981). "Failure to prove reasonable value is fatal to a quantum meruit claim." *Moran,* 178 S.W.3d at 610 (internal quotation omitted).

Koppe's testimony was sufficient to make a submissible case of quantum meruit. "In Missouri, a plaintiff seeking payment for services under quantum meruit can testify as an expert in his own behalf as to reasonable value of those services." *Id.*(internal quotation omitted). "The plaintiff's own testimony, considering his first hand knowledge of this case as well as his professional opinion, establishes the reasonableness of the fee in question." *Curnow,* 625 S.W.2d at 607. The Respondents made numerous objections to Koppe's testimony, which were overruled by the trial court. However, in making its decision on the motion for new trial, the key issue for the trial court, in deciding whether Koppe made a submissible case, was whether the amount Koppe claimed was owed to him was objectively reasonable.

On appeal, we must determine whether there was sufficient evidence of: (1) Koppe's qualifications as an expert; (2) the services Koppe provided to the Respondents; (3) the price Koppe charged for those services; and (4) the worth of those services. *Moran,* 178 S.W.3d at 610. Again, following a verdict in favor of plaintiff, we view the evidence on appeal from the grant of a new trial in the light most favorable to the plaintiff. *Steele,* 147 S.W.3d at 786.

Koppe testified regarding his expertise as an attorney with twenty-five years' appellate experience, working primarily in criminal appellate work, and who had handled up to 1,500 appeals at the time he provided services to the Respondents. Koppe also provided testimony that he performed services of value to Campbell, Howell, and Grand Avenue De-velopers. He testified in detail as to the work he provided to the Respondents, including the hours spent on each step of the appeal and the contributions made by Campbell. Finally, Koppe explained how he calculated an amount due to him and that it was his opinion that the amount was a reasonable value based on the work he provided. In making an assessment of the value of his services, Koppe testified that he relied on various factors. "The factors to be considered in determining reasonable value of attorneys' fees in Missouri are time, nature, character and amount of services rendered, nature and importance of the litigation, degree of responsibility imposed on or incurred by the attorney, the amount of money or property involved, the degree of professional ability, skill and experience called for and used, and the result achieved." *Reid v. Reid,* 906 S.W.2d 740, 743 (Mo.App. E.D.1995). In Koppe's testimony, he touched on each of the factors set forth in *Reid.* After taking all of those factors into account, Koppe testified that he calculated the fair and reasonable value for his services to be $448,000. In arriving at this number, Koppe explained that he doubled the hourly rate of $350 to account for the risk he took in case the appeal was unsuccessful or if the building did not sell. Koppe testified that, in his opinion, the value of his services was reasonable and fair. "Each case is different, and plaintiff's testimony alone can establish the reasonable value of his charge, considering the professional base fee upon which it was founded." *Curnow,* 625 S.W.2d at 607. Under Missouri law, Koppe's testimony was sufficient to make a submissible case of quantum meruit.

Although the Respondents offered their own experts to testify regarding the reasonable value of Koppe's services, "[o]pinions of experts, when in conflict, must be weighed by the trier of

fact and considered in light of such matters as experience, knowledge, attention given to the case, and the interest of each." *Id.* Moreover, "[a]lthough evidence of what is charged by others in the community can be considered, it is not dispositive." *Id.* The jury was free to weigh the testimony of Koppe against the testimony of the Respondents' experts and make their determination as to a reasonable award of damages.

### Prejudgment Interest

Koppe also argues that the trial court erred in granting Respondents' motion for new trial on the second ground stated by the trial court, namely that the trial court erroneously submitted "Instruction No. 10, which allowed the jury to award Plaintiff prejudgment interest from January 31, 2007."

■■■ We review, *de novo*, whether a jury was properly instructed. *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003). "In order to preserve claims of instructional error for review, counsel is required to make specific objections to the instruction at trial and again raise the error in the motion for new trial." *State v. Richards*, 300 S.W.3d 279, 281 (Mo.App. W.D.2009) (internal quotation omitted). "A point on appeal may not enlarge or change the objection made at trial." *Berra v. Danter*, 299 S.W.3d 690, 703 (Mo. App. E.D.2009) (internal quotation omitted). "When the point on appeal contends that an instruction is erroneous on a different ground than was asserted in the objection made at trial, we may not review that error on appeal." *Id.*

During the instruction conference, the court asked the Respondents if they had any objection to "the damages instruction patterned after 4.04 and *Turpin vs. Anderson*, 957 S.W.2d 421." Respondents' counsel first stated that "[d]efendant would object to the—any allowance of interest to be determined, based upon the fact that a specific demand was not made, even in the plaintiff's initial petition." After Koppe's attorney made a brief response, Respondents' counsel added "[j]ust one other thing, Judge. In terms of—in determining the reasonable value, again, we object to that, based upon it's not in MAI instruction or part of the 4.04." The court overruled the objections and directed that Instruction No. 10 be given.

■■■ In their motion for a new trial, Respondents asserted the following:

a.) There was no evidence Plaintiff made a specific monetary demand on Defendants either prior to the lawsuit or in his Petition and, therefore was not entitled to prejudgment interest; and/or

b.) There was no legal basis or authority for Plaintiff to submit a damage instruction which substantially deviated from MAI 4.04;[3]

■■■ "The often stated general rule is that interest is not recoverable on an unliquidated demand. The courts, however, have subjected the general rule to various interpretations and exceptions." *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 6 (Mo. banc 1987) (citations omitted). One such exception was recognized in *Laughlin v. Boatmen's National Bank*, 354 Mo. 467, 189 S.W.2d 974 (1945). In *Laughlin*, the Court held that prejudgment interest could be awarded in an action "in quantum meruit for the reasonable value of legal

---

**3.** The motion further claimed that "Instruction number 10 is argumentative." Respondents made no such claim during the instruction conference, nor did they argue it, either in their suggestions supporting their motion in the trial court, or in their brief on appeal. Accordingly, we do not consider it. *Berra,* 299 S.W.3d at 703.

services." *Id.* at 978. In analyzing the issue, the Court stated:

> An action in quantum meruit, for the reasonable value of services, is one of the forms of an action in assumpsit. Assumpsit is the remedy for the enforcement of quasi-contractual obligations and included in it and concurrent with it ... are the common law actions of debt, by which the customary duty or obligation for the payment of money was enforced, and of account. On principle there is no reason for denying interest when the action is in quantum meruit and the claim is unliquidated in the sense that the amount due is to be measured and determined by the standard of the reasonable value of the services. The theory of interest in any case is compensation for the use of or loss of the use of money to the person entitled to it. If the defendant is liable for the reasonable value of services he is under a legal duty to liquidate the sum due and interest should be allowed from the time when he should have paid. For benefits conferred upon request, or enjoyed under various circumstances which are tantamount to a request, there is a legal duty to make compensation; this is measured by the standard of reciprocal justice. The party in whose favor such duty is implied is legally entitled to recover so much as he reasonably deserves. Interest is in many cases allowed upon this principle. It is almost an axiom in American jurisprudence that he who has the use of another's money, or money he ought to pay, should pay interest on it. This principle has been applied often in actions for the reasonable value of work and labor and to claims for legal services generally.

*Id.* at 979 (internal citations and quotations omitted). The Court's decision in *Laughlin* was consistent with and followed prior decisions, such as *Trimble v. Kansas City,*

*Pittsburg & Gulf Railroad Co.,* 180 Mo. 574, 79 S.W. 678, 681 (1904), *Mecartney v. Guardian Trust Co.,* 274 Mo. 224, 202 S.W. 1131, 1141 (1918), *Sherman v. International Life Insurance Co.,* 291 Mo. 139, 236 S.W. 634, 642 (1921).

 *Laughlin* has since been followed or cited with approval in numerous cases, including *Mid–West Engineering & Construction Co. v. Campagna,* 421 S.W.2d 229, 234 (Mo.1967), *General Aggregate Corp. v. LaBrayere,* 666 S.W.2d 901, 909–10 (Mo.App. E.D.1984), and *Catron,* 723 S.W.2d at 6–7, to name a few. Thus, "[a] claim in quantum meruit for the reasonable value of services is not unliquidated within the contemplation of the general rule." *Whalen, Murphy, Reid, Danis, Garvin & Tobben v. Estate of Roberts,* 711 S.W.2d 587, 590 (Mo.App. E.D.1986). "A plaintiff is allowed pre-judgment interest even if he is not entitled to the full amount of his demand," and "[a]n award of prejudgment interest is proper in the case of attorney's fees." *Id.*

 Accordingly, an award of prejudgment interest is proper in Koppe's action in quantum meruit. Nonetheless, Respondents assert that the trial court was correct in granting the motion for new trial because Koppe made no demand for payment of a specific amount, either prior to trial or in his petition. While Respondents are correct that Koppe made no specific demand, their conclusion that this failure precludes prejudgment interest in this case is erroneous. This is so because "[a]s to the requirement that a party make a demand for payment, even if a demand for payment was not made prior to filing a lawsuit, the filing itself constitutes a demand." *Hawk Isolutions Group, Inc. v. Morris,* 288 S.W.3d 758, 762 (Mo.App. E.D.2009). Moreover, even though Koppe's petition only generally averred in

the prayer that Koppe was seeking "an amount that is fair and reasonable, inclusive of prejudgment interest," this was adequate because "[a]n express allegation in the petition seeking prejudgment interest is not a prerequisite to an award of such interest." *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 111 (Mo.App. E.D. 2004). Missouri cases consistently hold that general requests for relief in the petition's prayer are sufficient. *See, e.g., Hawk Isolutions*, 288 S.W.3d at 763 ("Plaintiff specifically requested prejudgment interest in its prayer for relief."); *Watters*, 136 S.W.3d at 111–12 (stating prayer for money judgment "plus interest" was sufficient demand); *Gen. Aggregate*, 666 S.W.2d at 910 (stating plaintiff's prayer for "such other relief as may be proper under the premises" was adequate demand); *Haynes v. Allen*, 482 S.W.2d 85, 89 (Mo.App. E.D.1972) (holding that petition's prayer "to grant such other and further relief as the court may deem meet and proper in the premises" was sufficient demand).

 In light of the foregoing, it is apparent that the trial court erred in granting a new trial on the grounds that Koppe was not entitled to prejudgment interest or failed to make demand therefor. But there is still the issue regarding Instruction No. 10 deviating from the Missouri Approved Instructions (MAI).[4] MAI 4.04, last revised in 1981, is the approved damages instruction for quantum meruit. It provides: "If you find in favor of plaintiff, then you must award plaintiff the reasonable value of the goods furnished [with ___% interest thereon from ___]." Instruction No. 10, given at trial, provided:

If you find in favor of plaintiff, then you must award plaintiff the reasonable value of the legal services furnished by plaintiff, with nine percent interest thereon from January 31, 2007. *In determining the reasonable value of plaintiff's legal services, you may consider: the time, nature, character, and amount of legal services furnished by the plaintiff; the nature and importance of the appeal for which plaintiff provided the legal services; the degree of responsibility imposed on or incurred by the plaintiff; the amount of money or property involved in the appeal; the degree of professional ability, skill, and experience called for and used by the plaintiff; and the results achieved because of the plaintiff's work on appeal.*

Although the first portion of the instruction contains the MAI 4.04 language verbatim, the italicized language is a deviation from MAI 4.04.

 We conduct a four-step inquiry when an instruction deviates from MAI. *Syn, Inc. v. Beebe*, 200 S.W.3d 122, 128 (Mo.App. W.D.2006). "First, if the MAI prescribes a particular form of instruction, submission of that instruction is mandatory." *Id.* Failure to use the MAI instruction mandates that we presume prejudicial error. *Id.* at 128–29. "Second, the proponent of the instruction bears the burden of demonstrating nonprejudice." *Id.* at 129. In doing so, the proponent must make it "perfectly clear" that no prejudice occurred, otherwise the presumed prejudice prevails. *Id.* "Third, the appellate court determines if any prejudicial effect is created." *Id.* "Finally, to be reversible, the error must materially affect the merits of the case." *Id.* A new trial is required "only if the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error." *Rinehart v. Shelter Gen. Ins. Co.*, 261 S.W.3d 583, 593 (Mo.App. W.D.2008) (internal quotation omitted).

4. All references to MAI are to the 1981 revision, unless otherwise indicated.

It is undisputed that Instruction No. 10 deviated from MAI 4.04. Accordingly, we presume prejudice. In his reply brief, Koppe claims there was no prejudice resulting from the additional language because the language merely referenced the six factors used to determine the reasonable value of legal services as outlined in Missouri cases. In particular, he notes that MAI 4.04 was last revised in 1981, and the additional language added to Instruction No. 10 is an accurate statement of the law, coming almost verbatim from a 1997 decision of this Court, *Turpin v. Anderson*, 957 S.W.2d 421 (Mo.App. W.D.1997).

*Turpin* involved an attorney's attempt to collect on a contingent fee. *Id.* at 424–25. A jury returned a verdict for $46,000 in favor of the attorney, and the Andersons, the clients, appealed. *Id.* at 425. The case was submitted on quantum meruit and on appeal, the Andersons argued, *inter alia*, that the award exceeded "all bounds of reasonableness." *Id.* at 427. In rejecting the contention, the Court explained the considerations that go into determining a reasonable attorney's fee. *Id.* The Court stated:

> In order to sustain a claim for quantum meruit, the plaintiff must shoulder the burden of proving the reasonable value of services performed. In making the determination of what constitutes a reasonable attorneys' fee, consideration is given to (1) the time, nature, character and amount of services rendered; (2) the nature and importance of the litigation; (3) the degree of responsibility imposed on or incurred by the attorney; (4) the amount of property or money involved; (5) the degree of professional ability, skill and experience that was called for and used; and (6) the result that was achieved.

*Id.*(internal citations omitted).

In the trial court, both at the instruction conference and in their suggestions in support of their motion for JNOV or new trial, Respondents made little mention of Instruction No. 10's deviation from MAI 4.04. They similarly pay little heed to the issue on this appeal, devoting approximately one page of their forty-one page brief to essentially stating that the instruction was a deviation from MAI 4.04 and that three cases Koppe relied on (not including or even mentioning *Turpin*) were distinguishable. Not only do they fail to tell us how they were prejudiced, they do not even mention that we must presume prejudice, nor do they identify the analysis, outlined *supra*, that we must use in evaluating the prejudicial effect.

Koppe is correct that the additional language in Instruction No. 10 is an accurate statement of the law. As noted, it comes almost verbatim from *Turpin*, a case decided long after MAI 4.04 was last revised. Both parties referenced the factors listed in Instruction No. 10 in their closing arguments. And had the language not been added to the instruction, it would have been entirely appropriate for either or both parties to argue that the jury should consider those factors in determining the reasonable value of Koppe's legal services. Similarly, because it is an accurate statement of the law, the jury could properly consider the factors listed and whether there was evidence regarding any or all of those factors in deciding the reasonable value of Koppe's legal services. Therefore, it is clear that no actual prejudice resulted from inclusion of the additional language in Instruction No. 10. Since there was no prejudicial effect, the error did not materially affect the merits of the case in that the Instruction No. 10 did not misdirect, mislead, or confuse the jury. *Syn, Inc.*, 200 S.W.3d at 128. Indeed, if anything, the additional language imposed a greater burden on Koppe than he other-

wise had because the jury no doubt considered the evidence on each and every one of those factors in reaching its verdict.

While we do not approve of adding the additional language to MAI 4.04, and would not recommend that it be done in other cases, no prejudice resulted in this case. Since the jury was not misdirected, misled, or confused by the instruction, a new trial is not required. *Id.*

### Personal Liability of Campbell and Howell

■ In addition to the grounds specified by the trial court, the Respondents contend that the trial court correctly granted their motion for a new trial on the basis that Campbell and Howell were not personally liable for the work Koppe performed for K.J.C., as asserted in their motions for directed verdict and motion for JNOV or new trial. As support for this contention, the Respondents cite numerous cases holding that corporate officers and shareholders are not liable for the debts of the corporation. *See, e.g., Benson Optical Co. v. Floerchinger,* 810 S.W.2d 531, 534 (Mo.App. E.D.1991), *Ingram v. Lupo,* 726 S.W.2d 791, 795 (Mo.App. E.D.1987); *Golf Digest/Tennis, Inc. v. Diode, Inc.,* 849 S.W.2d 617, 618 (Mo.App. E.D.1993). However, none of these cases hold that the jury was unable to determine that Koppe provided work for Campbell and Howell personally as well as for the corporation.

The evidence presented to the jury demonstrated two conflicting versions of the business relationship between the parties: one, that Koppe provided services to Campbell, Howell, and K.J.C.; the other, that Koppe provided services solely to K.J.C. On one hand, the evidence included testimony from both Campbell and Koppe that Campbell had requested Koppe's services in the appeal, just as Campbell had in previous appeals. Koppe also testified

that Howell had agreed to pay Koppe upon the sale of the building. Further, the briefs and motions showed Campbell filed the work by Koppe under his name and the name of his firm, with no mention of K.J.C. Moreover, letters from Campbell to Koppe, discussing his payment, contained the letterhead of Campbell's firm, with no mention of K.J.C. On the other hand, Koppe and Campbell both testified that the only named defendant in the litigation was K.J.C. Both also testified that there was never a statement that Koppe's services were being performed on Campbell and Howell's personal behalf.

In addition to the conflicting evidence, there were also two instructions presented to the jury mirroring these two versions of the business relationship. First, instruction 7 read:

> Your verdict must be for plaintiff if you believe:
>
> First, plaintiff furnished legal services to defendants John Campbell and Leon Howell regarding an appeal by K.J.C. Development Corporation, and
>
> Second, defendants John Campbell and Leon Howell accepted such services, unless you believe that plaintiff is not entitled to recover by reason of Instruction 9.

The Respondents objected on the basis that "there was no evidence that tends to prove that either Mr. Campbell or Mr. Howell personally benefited or agreed to be personally responsible for any services provided by Mr. Koppe, but it was all through K.J.C. Development Corporation." The trial court overruled the objection and the Respondents again raised the issue in their motion for new trial.

Instruction 9, which was also presented to the jury read:

Your verdict must be for defendants Leon Howell and John R. Campbell, Jr., under Instruction 7, if you believe:

First, all legal services which plaintiff provided were performed only on behalf of K.J.C. Development Corporation, and

Second, plaintiff knew that the legal services he was providing were performed only on behalf of K.J.C. Development Corporation.

Thus, the jury was presented with two alternative instructions of how the business relationship was formed and for whom Koppe provided services.

The jury was free to consider all of the evidence and make a determination regarding this issue. "The jury, as the trier of fact, was free to believe or disbelieve all, part or none of the testimony, even if it was unimpeached or uncontradicted." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 795 (Mo.App. W.D. 2008) (internal quotation and emphasis omitted). Here, although there was evidence that contradicted Koppe's testimony, the jury was entitled to make its own credibility determination. *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 819 (Mo. banc 2000). On appeal from the grant of a new trial after a verdict in favor of plaintiff, we are required to view the evidence and inferences in the light most favorable to plaintiff. *Steele,* 147 S.W.3d at 786. Accordingly, we find that there was sufficient evidence to support the jury's finding that Koppe provided services to Campbell and Howell personally.

### Amount of Verdict Not Supported by the Verdict

 Finally, the additional claim raised in the Respondents' motion for JNOV was that the jury's verdict was not supported by the evidence. The Respondents claimed that the expert testimony present- ed only supported a range of compensation between $8,750 and $13,650.

 "In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Giddens,* 29 S.W.3d at 818. "This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." *Id.* "The jury is the sole judge of the credibility of witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony." *Moran,* 178 S.W.3d at 609 (internal quotation omitted).

Respondents' argument on this point is devoid of merit. Respondents ignore a significant amount of testimony provided at trial. As discussed *supra,* Koppe testified as to his fee and contended that he should be paid $448,000. Koppe's expert also testified and said he received $300 per hour in compensation for his testimony at trial. Additionally, Campbell testified that he was billing $180 per hour in the 1990's and was billing $250 per hour at the time of the trial. Moreover, the Respondents' expert witness testified that he charged between $95 and $125 per hour in 2000, while charging $225 for his services in the instant case. Finally, the Respondents' expert witness contended that the amount of time Koppe could have spent on the appeal was between 87.5 and 136.5 hours. Therefore, the lowest range of compensation was valued at $8,312, while the highest range of compensation was valued at $448,000. The jury ultimately returned a verdict for $150,000. Accordingly, we do not find that this point in the Respondents'

motion for JNOV could support the trial court's ruling.

The trial court's judgment granting Respondents' motion for judgment notwithstanding the verdict, and the alternative ruling granting Respondents' motion for new trial, is reversed, and the cause is remanded with directions to reinstate the jury's verdict in favor of Mr. Koppe.

All concur.