## ROYAL FOREST CONDOMINIUM OWNERS'S ASSOCIATION, Respondent,

### v.

## Donna KILGORE, Appellant.

### No. ED 99047.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 24, 2013.

Richard J. Keyes, St. Louis, MO, for appellant.

Frank K. Schmidt, Lisa M. Montano, St. Louis, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

## Introduction

Donna Kilgore (Kilgore) appeals the trial court's judgment in favor of Royal Forest Condominium Owners' Association (Association) on the Association's claim of unjust enrichment. Kilgore argues the trial court erroneously applied the law because the Association's claim was barred by the applicable statute of limitations. We reverse.

## Background

The Association is a non-profit corporation that governs, maintains, manages, administers, and operates a residential community known as the Royal Forest Condominium. Kilgore served as the Association's president from the fall of 1998 through December of 2004. According to the Association's bylaws, the position of president is a non-compensated, volunteer board member position. There are no exceptions in the bylaws allowing compensation for any board members. The bylaws also require every owner of a condominium governed by the Association to pay a monthly condominium fee. Kilgore's monthly condominium fee during the time she was president was $114.

During Kilgore's tenure as president, she oversaw certain construction contracts that she testified were outside the scope of her duties as president and took 25 to 30 hours of her time per week. In October of 2001, Kilgore informed the Association that she did not wish to be reelected as president or to continue overseeing the contracts unless she could be compensated for this work. One board member objected to this as a violation of the bylaws' prohibition of compensation for board members. Kilgore testified that at the October meeting, the owners present voted that she should receive compensation as an owner, not as a board member, for her work on the contracts. The Association also offered evidence of a vote taken to waive Kilgore's condominium fees at a board meeting in December of 2001, at which Kilgore and only one other board member were present. In any event, Kilgore was reelected as president, and during the years 2002 through 2004, her monthly condominium fees were credited in Kilgore's tenant ledger kept by the Association's property manager, often listed as a credit for "lawn care" or "grounds maintenance."

In January of 2011, the Association's board voted to bring suit against Kilgore for these credited fees. The Association filed a petition on May 4, 2011, alleging counts of breach of contract, fraud, and unjust enrichment. The petition sought damages in the amount of $4,104, representing three years' worth of Kilgore's monthly condominium fees, and reasonable attorney's fees in addition to that amount. On November 30, 2011, the trial court conducted a trial without a jury. Kilgore moved for a directed verdict [1] at the close of the Association's case, which

---

1. Because this was a court-tried case, the motion for directed verdict should have been treated as a motion for judgment under Mo. R. Civ. P. 73.01(b) (2013), "requiring the court to determine credibility of witnesses and to weigh the evidence." *Wyrozynski v. Nichols*, 752 S.W.2d 433, 436–37 (Mo.App. E.D.1988).

the trial court took with the case. The trial court issued a judgment on January 12, 2012, in favor of the Association on its unjust enrichment claim. The trial court awarded the Association $4,104 in damages and $2,500 as and for attorney's fees. The trial court's judgment also denied Kilgore's motion for directed verdict.

Kilgore subsequently filed a Motion to Set Aside or Amend or For Rehearing or to Make Final the January 12, 2012 Judgment, which the trial court denied. Kilgore appealed, and this Court dismissed the appeal on its own motion due to lack of a final judgment. The trial court then entered an amended judgment on September 16, 2012, in which it dismissed the Association's remaining claims of breach of contract and fraud with prejudice. The Association did not appeal the dismissal of its other claims. This appeal of the trial court's judgment regarding only the claim of unjust enrichment follows.

### Standard of Review

■ Our review of a court-tried case is governed by the principles set forth by the Missouri Supreme Court in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We defer to the trial court's factual findings so long as they are supported by substantial evidence, but if our inquiry is purely legal, we need not defer to the trial court's conclusion. *See*

*Pearson v. Koster*, 367 S.W.3d 36, 43–44 (Mo. banc 2012). Whether a statute of limitations applies to an action is a legal question that we review *de novo.* *Drury v. Mo. Youth Soccer Ass'n, Inc.*, 259 S.W.3d 558, 576 (Mo.App. E.D.2008).

### Discussion

■ Kilgore raises two points on appeal, the first of which is dispositive. She argues that the trial court erred in granting judgment in favor of the Association,[2] because the Association's claim was barred by the applicable statute of limitations. We agree.

■ Section 516.120(1)[3] provides a five-year statute of limitations for "[a]ll actions upon contracts, obligations or liabilities, express or implied...." An action for unjust enrichment is based on an implied or quasi-contractual obligation. *Landmark Sys., Inc. v. Delmar Redev. Corp.*, 900 S.W.2d 258, 262 (Mo.App. E.D. 1995). Such actions are subject to the five-year statute of limitations in Section 516.120(1). *See Koppe v. Campbell*, 318 S.W.3d 233, 240 (Mo.App. W.D.2010).

■ Here, the parties agree the five-year statute of limitation applies, but disagree as to when it began to run. Under Section 516.100, limitations periods begin to run when the cause of action accrues. "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertain-

---

2. Kilgore's point relied on actually alleges error in the trial court's failure to sustain her motion for directed verdict, rather than error in the trial court's judgment in favor of the Association. In this court-tried case, the trial court's judgment simultaneously disposing of the case on the merits and denying the motion for directed verdict was a decision on the merits, from which Kilgore appeals. Her legal argument is the same for both, and thus "the appeal from such a ruling is from a final

determination of the issues and is compassed by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *City of Hamilton v. Pub. Water Supply Dist. No. 2 of Caldwell County*, 849 S.W.2d 96, 100 (Mo.App. W.D.1993).

3. All statutory references are to RSMo. (Supp. 2011), unless otherwise indicated.

ment, and, if more than one item of damage, then the last item...." Section 516.100. When damage is capable of ascertainment is an objective question. *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. banc 2006). "Damage may be ascertained when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Koppe*, 318 S.W.3d at 240 (quoting *State ex rel. Marianist Province of U.S. v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008)) (internal quotation omitted).

Here, the evidence found credible by the trial court established that the last item of damages was capable of ascertainment no later than January 1, 2005. First, the trial court found the Association's sole witness, Martha Buckley (Buckley), who was serving as the Association's president at the time of trial, to be very credible. According to her testimony, at the annual board meeting in October of 2001, a discussion regarding Kilgore's request to waive her monthly condominium fees is reflected in the minutes of the meeting. The minutes also show that the secretary of the board objected to this as improper compensation for board members under the Association's bylaws. The secretary subsequently submitted a letter dated November 2, 2001 to the Association's property manager responsible for collecting monthly condominium fees for the Association, stating that he objected to any credit for Kilgore and outlining his reasons.

Buckley also testified that the minutes of the board meeting on December 13, 2001, show that "the board discussed the proposal to apply [ ] Kilgore's monthly condominium fees to common area repair expense in consideration for her supervising major capital expenditure over the next two years. The proposal was submitted and approved by the board." The minutes of an Association board meeting on January 10, 2002, show that the board approved the minutes of the meeting that took place on December 13, 2001.

Based on these facts, we conclude that any damage sustained by the crediting of Kilgore's monthly condominium fees was ascertainable by the Association each month that it was credited. First, while the Association claims the board's vote to credit Kilgore's fees was improperly taken in secret at the December 13, 2001 meeting at which only Kilgore and one other board member were present, the January of 2002 minutes reflect that the board approved the minutes from December of 2001. The first monthly credit Kilgore received was in January of 2002. Given the documentation regarding the dispute over the decision to credit Kilgore's monthly fees, as well as Buckley's testimony, we conclude the board was "put on notice of a potentially actionable injury." *Koppe*, 318 S.W.3d at 240 (quoting *Ross*, 258 S.W.3d at 811).

Next, Kilgore's term of president ended on December 31, 2004, and December of 2004 was the last month for which she received credit of her monthly condominium fees. These credits were recorded in Kilgore's tenant ledger each month, which was kept by the Association's property manager. Additionally, past board meeting minutes were kept in a storage area to which the Association president had access, but the board did not review them until sometime in the fall of 2010. While the Association emphasizes that the bylaws do not require subsequent boards to review the actions of past boards, and therefore argues the damages were not ascertainable, we disagree.

There was ample documentation putting any board member in late 2001 and early 2002 on notice that Kilgore's monthly association fees may be credited. It does not appear that any member of the board took

the opportunity to ascertain the extent of any damages by obtaining and reviewing Kilgore's tenant ledger from the property management company, but the fact remains that the opportunity existed at that time. *See Ross,* 258 S.W.3d at 811 (damages are ascertainable when reasonable person would have been put on notice of potential injury and undertaken to ascertain extent of damages).

Because the last alleged damage, which was the final fee credit for December of 2004, was capable of ascertainment no later than January 1, 2005, by filing its petition in May of 2011, the Association failed to bring its cause of action for unjust enrichment within the applicable five-year limitations period. Thus, the trial court erroneously applied the law in granting the Association's claim on its merits. Point granted.[4]

### Conclusion

We reverse the judgment of the trial court regarding the Association's claim of unjust enrichment, and we vacate the trial court's award of damages and attorney's fees. Accordingly, we enter judgment in favor of Kilgore on the Association's claim of unjust enrichment. Mo. R. Civ. P. 84.14 (2013); *Mitalovich v. Toomey,* 206 S.W.3d 361, 365 (Mo.App. E.D.2006) (particularly where only dispute on appeal is legal in nature, appellate court can enter appropriate judgment rather than remanding for correction). REVERSED.

LISA S. VAN AMBURG, P.J., and PATRICIA L. COHEN, J., concur.

---

4. Kilgore's second and final point on appeal is an alternative point regarding the propriety of attorney's fees, in the event we affirm the trial court's judgment regarding unjust enrichment. Because we grant Kilgore's first point, we need not consider her second point, which is therefore denied as moot.