

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| ROSE BRISCOE, <br> JONATHAN STERNBERG <br> AND WILLIAM BIRD, | ) <br> ) <br> ) <br> ) | |
| **Appellants,** | ) <br> ) | |
| v. | ) <br> ) | **WD85947** |
| LAW OFFICE OF JOSEPH A. <br> MORREY AND <br> PRESLEY & PRESLEY, L.L.C., | ) <br> ) <br> ) <br> ) | **Filed: February 20, 2024** |
| **Respondents.** | ) | |

## APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
### THE HONORABLE KATE SCHAEFER, JUDGE

## BEFORE DIVISION THREE: MARK D. PFEIFFER, PRESIDING JUDGE, GARY D. WITT, CHIEF JUDGE, AND W. DOUGLAS THOMSON, JUDGE

Law Office of Rose C. Briscoe, L.L.C. ("Briscoe"), The Bird Law Firm, P.C. ("Bird"), and Jonathan Sternberg, Attorney P.C. ("Sternberg"), (collectively, "Appellants") appeal the circuit court's judgment allocating attorneys' fees. The attorneys' fees were awarded in a settlement of claims asserted by Brenda Estes, as next friend of Jane Doe, against The Board of Trustees of the Missouri Public Entity Risk Management Fund and The Missouri Public Entity Risk Management Fund (collectively, "MOPERM"). The court

allocated the entirety of the attorneys' fees to Joseph A. Morrey ("Morrey") and the law firm of Presley & Presley, L.L.C. ("Presley & Presley") pursuant to their contingent fee contract. On appeal, Appellants contend the court misapplied the law in holding they could not recover attorneys' fees absent an existing contingency fee contract because Missouri law permits recovery of the fees in quantum meruit. Appellants further argue the court's finding that they had not proven the reasonable value of the services they performed was against the weight of the evidence. Finally, Appellants argue the court's finding that Sternberg did not have an existing contingency fee contract was against the weight of the evidence. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In 2012, a man raped and impregnated Jane Doe, who is an incapacitated and developmentally disabled adult with extremely limited speech capacity. In 2013, Estes, who is Jane Doe's grandmother and guardian, and Jane Doe's uncle ("Uncle"), entered into a contingent fee agreement with Briscoe to pursue a claim against those responsible for the rape. The rapist's wife, Alberta Hughes ("Hughes") was providing services to Jane Doe through her employer, which was under contract to provide services by the State of Missouri. Hughes left Jane Doe unsupervised with her husband during the period when the rape occurred.

On behalf of Jane Doe, through her next friend Estes, Briscoe filed a petition for damages against Hughes and others (collectively, "defendants") alleged to be responsible for the rape ("Underlying Case"). Estes entered into a contingent fee agreement with Briscoe on January 9, 2014. That same day, Briscoe and Bird entered into a co-counsel

2

agreement concerning the allocation of fees, and both served as counsel for Jane Doe in the Underlying Case through trial.

The trial resulted in a jury verdict in favor of Jane Doe and against Hughes in June 2015. The jury awarded Jane Doe $3,000,000 in compensatory damages and $6,000,000 in punitive damages. Estes was found 30% at fault for Jane Doe's injuries. The court entered judgment on the jury's verdict. After Hughes appealed, Estes and Briscoe entered into a contingent fee agreement with Sternberg to serve as appellate counsel for the Underlying Case on October 13, 2015. Briscoe, with consent of the client, also forwarded a letter to Bird asking him to withdraw from the Underlying Case. Bird withdrew on October 14, 2015. Bird provided no additional legal services for Estes or Jane Doe after that date.

In August 2016, Briscoe and Sternberg began communicating with Presley & Presley concerning the prosecution of a potential bad faith case against Hughes's insurance provider, MOPERM. On September 11, 2016, Estes, Briscoe, and Sternberg agreed to Presley & Presley's associating in the representation of Jane Doe in the prosecution of a bad faith case against MOPERM ("Bad Faith Case"). As relevant to this dispute, the agreement called for Presley & Presley to receive 50% of the attorneys' fees on any amounts recovered in excess of Hughes's MOPERM policy limits of $2,000,000.

After September 11, 2016, Presley & Presley took the lead in negotiating a resolution of the Underlying Case with Hughes's counsel and counsel for MOPERM.

In December 2016, this court, in case number WD79064, affirmed the original judgment entered in the Underlying Case. After we affirmed the original judgment, a

3

tentative settlement was reached with Hughes concerning her liability in the Underlying Case. This settlement was negotiated by Presley & Presley. The terms of the settlement required the entry of an amended judgment in favor of Estes in the amount of $8,000,000 in compensatory damages and eliminated the punitive damages award from the Underlying Case. The terms further required MOPERM to pay $2,000,000, which represented the indemnity limits of its insurance policy covering Hughes. The settlement also required Hughes to assign her extra-contractual claims to Jane Doe, including bad faith claims against MOPERM, up to the amount of the unsatisfied amended judgment against Hughes.

To complete the settlement of the Underlying Case, Estes and Hughes consented to the transfer of the case to the Missouri Supreme Court for the sole purpose of remanding the Underlying Case to the circuit court to complete and approve the settlement between the parties. The Supreme Court accepted transfer and subsequently remanded the Underlying Case to the circuit court pursuant to the settlement agreement.

The circuit court, in the case at bar, found the settlement of the Underlying Case:

> was due in large part to Presley and Presley, LLC taking the lead in negotiating a resolution of the Underlying Case with counsel for Alberta Hughes and counsel for MOPERM. This included settlement proposals that would result in the amendment of the original Judgment entered in accordance with the jury verdict, that of which was necessary to occur to achieve any recovery of funds somewhat similar to the jury verdict. Anything else could have severely limited any recovery of a substantial amount.

On remand, Presley & Presley formally entered as co-counsel in the Underlying Case to seek approval of the settlement reached concerning Hughes's liability and payment from the MOPERM policy indemnity limits. After a hearing, the court entered its order

approving the settlement on May 11, 2017. The order required MOPERM to pay $2,000,000 on behalf of Hughes to Jane Doe. The court distributed $1,028,355.28 to the Jane Doe Irrevocable Special Needs Trust and distributed the remainder to Appellants in accordance with their contingent fee agreements. For attorneys' fees, Briscoe received $520,000, Bird received $280,000, and Sternberg received $100,000. For case expenses, Briscoe received $35,718.30, and Bird received $35,926.42. Presley & Presley did not seek or receive any attorneys' fees or reimbursement of expenses incurred out of the settlement of the Underlying Case.

On May 16, 2017, the court entered an amended judgment in the Underlying Case awarding Jane Doe $8,000,000 in compensatory damages. The conversion of punitive damages to compensatory damages in the amended judgment was essential for any possible opportunity to realize a substantially greater amount of funds payable to Jane Doe's special needs trust, assuming the Bad Faith Case was successful, than if the original judgment in the Underlying Case had been allowed to stand.

Following the settlement in the Underlying Case, Presley & Presley began preparing a bad faith claim and retained an expert to address MOPERM's claims handling and liability for the excess amount of the amended judgment. On January 17, 2018, before the filing of the Bad Faith Case, Estes discharged Briscoe as counsel for Jane Doe. Because Presley & Presley's initial representation was pursuant to Briscoe's contingent fee agreement with Estes, Presley & Presley's initial representation of Jane Doe was effectively terminated at the same time Briscoe was discharged.

5

On January 31, 2018, Estes and Uncle met with Presley & Presley to discuss the firm's involvement in prosecuting the Bad Faith Case against MOPERM. Estes and Uncle requested that Morrey attend the meeting, although he had not yet been hired as counsel. Presley & Presley gave Estes a proposed contingent fee agreement at the end of the meeting.

Estes elected not to execute the contingent fee agreement with Presley & Presley but instead decided to retain Morrey under a contingent fee agreement. After he was retained, Morrey, with Estes's consent, invited Presley & Presley to associate with him to prosecute the Bad Faith Case against MOPERM. Estes agreed that Morrey would receive 50% and Presley & Presley would receive 50% of any attorneys' fees earned and approved in the Bad Faith Case.

Presley & Presley, Morrey, and Hughes's counsel sent a pre-judgment interest demand to MOPERM offering to settle the Bad Faith Case. MOPERM did not respond with a settlement offer. Presley & Presley and Morrey then filed a petition asserting bad faith failure to settle and breach of fiduciary duty against MOPERM. Presley & Presley and Morrey engaged in written discovery, motion practice, and depositions. Presley & Presley was counsel of record at the depositions and prepared the original drafts of all pleadings filed. Morrey was responsible throughout the Bad Faith Case for client communications, helped prepare and review pleadings, prepared Estes for her deposition, participated in Estes's and Hughes's depositions, helped prepare for and participated in the deposition of another witness, and fully prepared the clients for all settlement negotiations.

MOPERM filed a motion for summary judgment on both claims in the Bad Faith Case, arguing it was entitled to sovereign immunity and denying that it had acted in bad faith or inappropriately toward Hughes. Morrey and Presley & Presley filed suggestions in opposition to the motion. The circuit court entered summary judgment in favor of MOPERM on the basis of sovereign immunity, and thereafter Morrey and Presley & Presley collaborated in appealing the summary judgment to this court. Presley & Presley prepared the brief and argued the case on appeal. We reversed the summary judgment and remanded the Bad Faith Case to the circuit court. *Estes as Next Friend for Doe v. Bd. of Trustees of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678 (Mo. App. W.D. 2021).

On remand, the Bad Faith Case was set for trial. Before trial, however, the parties went to mediation and were able to negotiate a settlement. Prior to the approval of the settlement, a dispute arose among the attorneys that had been involved in the Underlying Case and the Bad Faith Case regarding the allocation of the attorney fees. On August 30, 2022, the circuit court approved the confidential settlement. In its order, the court approved the distribution of the settlement funds owed to Jane Doe into her trust and ordered the settlement funds attributable to attorneys' fees "to be paid to the Clerk of the Circuit Court of Buchanan County, Missouri into an interest-bearing account."[1] The amount approved to be paid to Jane Doe was paid over to her trust without objection. The only dispute was as to the distribution of the attorneys' fees between the various counsel.

---

[1] The court also distributed a certain amount to Presley & Presley as reimbursement for case expenses. Appellants do not contest this distribution.

7

The court subsequently held a hearing to determine how to allocate these attorneys' fees between Estes's counsel. Following the hearing, the court entered its judgment allocating 50% of the attorneys' fees to Presley & Presley[2] and 50% to Morrey from the proceeds of the Bad Faith Case. In its findings of fact and conclusions of law, the court found that Presley & Presley's and Morrey's right to the attorneys' fees from the settlement in the Bad Faith Case arose from the contingent fee agreement entered between Morrey and Estes.

As for Appellants, the court found that Bird was operating under a contingent fee contract in the Underlying Case prior to October 14, 2015; Briscoe was operating under a contingent fee contract for the pursuit of claims in the Underlying Case prior to January 17, 2018; and Sternberg was operating under a contingent fee contract in the Underlying Case prior to April 4, 2017, when the Underlying Case was remanded by the Supreme Court to the circuit court. The court found Appellants were paid pursuant to the terms of their respective contingent fee contracts from the $2,000,000 settlement in the Underlying Case, and their contingent fee contracts were satisfied upon this payment. Specifically, the court noted that, to satisfy the contingencies in their contracts, Appellants had to recover money by judgment or settlement in the Underlying Case. The court found Appellants accomplished this by securing the May 11, 2017 settlement, which closed the Underlying Case. The court found Estes chose Morrey and Presley & Presley to represent her in the

---

[2] The trial court made a factual finding that Morrey, Sternberg, and Bird did not dispute that Presley & Presley were entitled to the entire 50% of the attorney fees; only Briscoe challenged this portion of the fee distribution.

8

Bad Faith Case. Finally, the court found Appellants did not have existing contingency fee contracts with Estes for the Bad Faith Case after January 17, 2018, and further they were not entitled to recover attorneys' fees in quantum meruit because they failed to prove the reasonable value of any services performed by them in the Bad Faith Case. Appellants filed this appeal.

## STANDARD OF REVIEW

We review the circuit court's judgment allocating attorneys' fees under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *McCoy v. Hershewe Law Firm, P.C.*, 366 S.W.3d 586, 596 (Mo. App. W.D. 2012). Hence, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment, disregarding all contrary evidence and inferences. *McCoy*, 366 S.W.3d at 596. We review claims that the court erroneously declared or applied the law *de novo*. *Estate of Briggs*, 449 S.W.3d 421, 425 (Mo. App. S.D. 2014).

The circuit court "is considered an expert on the question of attorney fees." *McCoy*, 355 S.W.3d at 596 (citation omitted). "In the absence of contrary evidence, the trial court is presumed to know the character of the services rendered in duration, zeal and ability, and to know the value of them according to custom, place, and circumstance." *Id*. (citation omitted).

9

**ANALYSIS**

**Point I Recovery Absent Contingency Fee Contract**

In Point I, Appellants contend the circuit court erred in holding they could not recover attorneys' fees absent an existing contingency fee contract. They argue the court misapplied the law because Missouri allows a discharged attorney to recover the reasonable value of legal services rendered under the doctrine of quantum meruit. Appellants assert the court "ignore[d] the entire doctrine of quantum meruit" and failed to consider the "substantial evidence of their services." We disagree.

In its judgment, the court specifically acknowledged and addressed Appellants' quantum meruit claims at length. After finding that none of the three Appellants had an existing contingency fee contract with Estes in regards to the Bad Faith Case after January 17, 2018, the court reviewed their request for attorneys' fees from the Bad Faith Case under a claim for quantum meruit. The court properly noted that, under the doctrine of quantum meruit, attorneys who have been discharged prior to the occurrence of a contingency are entitled to "the reasonable value of services rendered," citing *McCoy*, 366 S.W.3d at 597. The court then set out the factors to consider in determining an award of attorneys' fees in quantum meruit. Based on those factors, the court found Appellants failed to meet their burden of proving the reasonable value of the services they performed in order to be entitled to attorney fees obtained from the settlement of the Bad Faith Case.

As to the Briscoe claim, the trial court found:

> 41. Although Ms. Briscoe did not have a new contract with the Plaintiff specifically detailing Ms. Briscoe's continued representation of her for the purpose of pursuing a bad faith claim, her previous contract had not

10

yet been terminated in writing. Ms. Briscoe testified at the hearings on this attorneys' fee dispute that from the date the settlement was approved in the Underlying Case to the date of her termination that she contacted the clients, had a meeting at US Bank with Kirk Presley, Brenda Estes and [Uncle], and reviewed emails from Presley & Presley, LLC. Ms. Briscoe testified that she had over 600 pages of emails and their corresponding attachments from Presley & Presley, LLC but did not specify when those emails were sent or whether they pertained to the Underlying Case or the Bad Faith Case. Ms. Briscoe testified that she should receive a percentage of the judgment entered in the Bad Faith Case based upon this work and work done in the previous Underlying Case, although her contract on the Underlying Case had been terminated in writing as of January 17, 2018.

As to the Bird claim, the trial court found:

42.   Mr. Bird testified at the hearings on this attorney's fee dispute that he should receive a percentage of the judgment entered in the Bad Faith Case based solely upon his work in the previous Underlying Case. There is no dispute Mr. Bird had no involvement in the Bad Faith Case after receiving his termination letter on October 13, 2015, other than providing sample pleadings and sending letters and emails in regards to his fee lien.  Mr. Bird did not provide any evidence of the reasonable value of his services for a quantum meruit claim in the Bad Faith Case, but provided evidence of his initial contract and what his opinion of the reasonable value of his services were in the Underlying Case, which he in turn argues transfers over to the Bad Faith Case.

As to the Sternberg claim, the trial court found:

43.   Mr. Sternberg testified at the hearings on this attorneys' fee dispute that he should receive a percentage of the judgment entered in the Bad Faith Case based solely upon his work in the appeal of the previous Underlying Case. He offered no evidence of work performed in the Bad Faith Case and did not handle the appeal in the Bad Faith Case. Although Mr. Sternberg's initial representation was never terminated in writing, his contract specified he would serve as lead appellate counsel to pursue Plaintiff's opposition to the first appeal and her cross-appeal in the Underlying Case. It also specifically stated his representation was limited to the scope of these terms and would not cover any services by Mr. Sternberg in the Circuit Court upon any remand to Circuit Court. Mr. Sternberg asserted the right to attorney fees in the Bad Faith Case based in quantum meruit, did not provide any evidence of the reasonable value of his services for a quantum meruit claim in the Bad Faith Case, but provided evidence of his

11

initial contract and what his opinion of the reasonable value of his services were in the Underlying Case appeal, which he in turn argues transfers over to the Bad Faith Case.

We further note that Sternberg's contract for legal services very specifically and thoroughly limits the scope of his representation solely to the appeal of the Underlying Case, and with very limited exceptions, clearly states he is not representing the client in any matter in the circuit court. Sternberg did not participate in any respect to the appeal of the summary judgment in the Bad Faith case, *Estes as Next Friend for Doe v. Bd. of Trustees of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678 (Mo. App. W.D. 2021).

In its conclusions of law, the trial court found:

> 10. The Court finds Briscoe, Bird and Sternberg's contingency fee contracts were satisfied upon payment of their fees pursuant to their respective contingency fee agreements in the Underlying Case. Briscoe, Bird and Sternberg had to recover money by judgment or settlement to satisfy the contingency. This was accomplished by the May 11, 2017 Settlement. The Underlying Case was closed. While it is unfortunate for Briscoe, Bird and Sternberg that Ms. Estes did not retain them for her potential Bad Faith case, the choice of a lawyer is the client's choice. Ms. Estes chose Joseph Morrey and ultimately Presley and Presley, LLC to represent her in a Bad Faith case.

> 11. The Court finds that Attorneys Briscoe, Bird and Sternberg did not have an existent contingency fee contract with the Plaintiff Brenda Estes in the Bad Faith Case as of January 17, 2018, and although did assert the right to attorneys' fees based in quantum meruit in the Bad Faith Case, did not meet the burden of proving the reasonable value of any services performed in the Bad Faith case; therefore, they are entitled to no attorney fees.

In light of the court's express language in its judgment, Appellants' contention that the court denied their request for attorneys' fees solely on the basis that they did not have

an existing contingency fee contract and "ignored" their quantum meruit claim is plainly without merit. Appellants conceded this point in oral argument. Point I is denied.[3]

**Point II Reasonable Value of Services Findings Against the Weight of the Evidence**

In Point II, Appellants contend the court's finding that they failed to prove the reasonable value of the services they performed in the Bad Faith Case was against the weight of the evidence. They argue they proved that the services they performed in the Underlying Case were necessary to the Bad Faith Case because the Bad Faith Case was predicated on the Underlying Case. Appellants also argue Briscoe and Sternberg performed pre-filing legal services in the Bad Faith Case itself and were entitled to recover for the reasonable value of those services.

While Appellants properly set forth the analytical sequence that must be followed when raising an against-the-weight-of-the-evidence challenge, they wholly fail to follow that framework in their brief. "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Interest of B.K.F.*, 623 S.W.3d 792, 796 (Mo. App. W.D. 2021)(internal citations omitted). "'[A] claim that the judgment is against the weight of the

---

[3] In their argument under Point I, Appellants also assert the court's judgment "appears to annul" Section 484.140, RSMo 2016, the attorney lien statute. They argue this is "a second basis why this Court should reverse" the judgment. "Issues that are raised only in the argument portion of the brief and are not contained in the point relied on are not preserved for appellate review." *Hawley v. Tseona*, 453 S.W.3d 837, 842 n.6 (Mo. App. W.D. 2014) (citation omitted). Because Appellants did not raise this issue in their point relied on, we will not address it.

evidence presupposes that there is sufficient evidence to support the judgment.' *In re J.A.R.[v. D.G.R.],* 426 S.W.3d 624, 630 (Mo. banc 2014)." *Id.* "When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence." *Meseberg v. Meseberg*, 580 S.W.3d 59, 66 (Mo. App. W.D. 2019). "'Failure to follow the applicable framework means the appellant's argument is analytically useless and provides no support for his or her challenge." *Langston v. Langston*, 615 S.W.3d 109, 116 (Mo. App. W.D. 2020) (quoting *Koch v. Koch*, 584 S.W.3d 347, 355 (Mo. App. S.D. 2019)).

However, *ex gratia* we choose to address Appellant's claim. Under the theory of quantum meruit, the fee available to an attorney hired on a contingent fee basis when the client has discharged the attorney prior to the occurrence of the contingency is limited to "the reasonable value of services rendered, not to exceed the contracted fee, and payable only upon the occurrence of the contingency." *McCoy, 366 S.W.3d at 597* (quoting *Plaza Shoe Store, Inc., v. Hermel, Inc.*, 636 S.W.2d 53, 60 (Mo. banc 1982)). "The contract sets out the contingency." *Goldstein & Price, L.C. v. Tonkin & Mondl, L.C.*, 974 S.W.2d 543, 548 (Mo. App. E.D. 1998). "The contingency set out in the contract triggers the obligation to pay the contracted fee." *Id.*

The party seeking fees in quantum meruit has the burden to prove the reasonable value of the services performed. *McCoy*, 366 S.W.3d at 597. In determining what constitutes the reasonable value of the services performed, the court is to consider:

> (1) the time, nature, character and amount of services rendered; (2) the nature and importance of the litigation; (3) the degree of responsibility imposed on or incurred by the attorney; (4) the amount of property or money involved;

14

(5) the degree of professional ability, skill and experience that was called for and used; and (6) the result that was achieved.

*Id*. (quoting *Turpin v. Anderson*, 957 S.W.2d 421, 427 (Mo. App. W.D. 1997)). Additionally, the court should consider "the fact that a client does not have to pay for duplicative service, and the services rendered must have enriched the client in the sense of benefits conferred." *Id.* "The application of these factors must necessarily vary on a case-by-case basis depending on the circumstances." *Id*.

Our review of Appellants' contingent fee contracts and the findings of the circuit court show the contingencies in those contracts were satisfied upon the settlement of the Underlying Case. Briscoe's and Bird's contingent fee contracts identified "any settlement or judgment" limited only to the Underlying Case as the trigger for payment. The contract between Estes, Briscoe, and Bird stated that the consideration for the agreement was their "investigating, handling and pursuing a claim for damages concerning [Jane Doe], [Jane Doe's daughter], and Brenda Estes, specifically, *Jane Doe, et al. v. Progressive Community Services, et al.* (Case No. 13BU-CV05586)," which is the Underlying Case. No contingencies related to the Bad Faith Case were present in these contracts. Bird and Briscoe participated in obtaining a substantial settlement in the Underlying Case, which fulfilled their obligations under their contingent contracts. Bird and Briscoe received payment from the Underlying Case settlement, pursuant to their contracts. Estes was entitled to terminate, and did terminate, those contracts. *Goldstein,* 974 S.W.2d at 548.

Similarly, no contingencies related to the Bad Faith Case existed in Sternberg's contract for legal services. *Id*. Sternberg's contract stated his services were limited in

scope to serving as lead appellate counsel in the appeal of the Underlying Case to this court and possibly to the Supreme Court. The contract specifically stated his representation would not cover any services by him in the circuit court upon any remand to the circuit court. Sternberg fulfilled the contingency in his contract and received payment when the Underlying Case was settled.

Nevertheless, Appellants argue they presented evidence of services they provided in the Underlying Case that were "necessary" for Estes to prevail in the Bad Faith Case and, therefore, entitled them to additional compensation from the Bad Faith Case settlement. Specifically, they contend Bird and Briscoe "negotiated pre-trial in a manner that set up" MOPERM for bad faith liability and "recovered the $9,000,000 judgment, that as amended, served as a condition precedent to pursuing" the Bad Faith Case. They assert Sternberg then "helped protect that $9,000,000 judgment on appeal." Appellants also argue Briscoe and Sternberg provided services directly to the Bad Faith Case, including helping Presley & Presley prepare and review the amended judgment in the Underlying Case, and Briscoe engaged an expert and prepared to make a bad faith claim against MOPERM. According to Briscoe, she exchanged approximately 600 pages of emails with Presley & Presley between September 2016 and January 2018. Other than the blanket assertion that their services in the Underlying Case had to have benefited the Bad Faith Case and therefore they should be entitled to payment of the percentage of their contingent fee agreements relating to the Underlying Case from the proceeds of the Bad Faith Case, they offered no evidence of the value of any work that they did in regards to the Bad Faith Case.

16

It is evident the circuit court did not find their evidence persuasive. In its judgment, the court found Briscoe did not specify whether the 600 pages of emails with Presley & Presley pertained to the Underlying Case or the Bad Faith Case, and the other services she testified consisted merely of contacting the clients and having a meeting with Presley & Presley and the clients. The court found it undisputed that Bird had "no involvement in the Bad Faith Case after receiving his termination letter on October 13, 2015, other than providing sample pleadings and sending letters and emails in regards to his fee lien." Finally, the court found Sternberg "offered no evidence of work performed in the Bad Faith Case." Most importantly, the court found Appellants did not provide *any* evidence of the reasonable value of their services *to the Bad Faith Case* but, instead, simply asserted they were entitled to the same compensation provided for in their terminated contingent fee contracts from the Underlying Case. "The failure to prove reasonable value is fatal to a quantum meruit claim." *McCoy*, 366 S.W.3d at 597.

The judgment indicates that Appellants' services, if any, performed for the Bad Faith Case "were preliminary, not complex, and were not a substantial contributing factor to the end result." *Id*. In such circumstances, "a focus on the time and amount of services may be more appropriate than focusing on other factors" when deciding whether to award attorneys' fees in quantum meruit. *Id*. Here, the court found more persuasive the evidence that Morrey and Presley & Presley *alone* spent years performing legal services of value that enriched Estes and benefited her in the Bad Faith Case. The court found that, after September 11, 2016, Presley & Presley took the lead in negotiating a resolution of the Underlying Case with counsel for Hughes and MOPERM, including settlement proposals.

17

Despite taking the lead in settling the Underlying Case, Presley & Presley did not seek any attorneys' fees or expenses incurred from the Underlying Case settlement, which paid attorneys' fees and expenses only to Appellants. After the Underlying Case was settled, Presley & Presley began collecting documents and retained an expert for the Bad Faith Case. Once Estes retained Morrey, and Morrey invited Presley & Presley to associate with him to prosecute the Bad Faith Case, Morrey and Presley & Presley sent a pre-judgment demand to MOPERM; filed the petition asserting claims of bad faith and breach of fiduciary duty; engaged in written discovery, motion practice, and depositions; responded to MOPERM's summary judgment motion; appealed the court's entry of summary judgment; briefed and argued the appeal, which was successful; engaged in mediation of the case upon remand; and negotiated a substantial confidential settlement of the case.

The trial court's determination that Appellants failed to prove the reasonable value of services performed in the Bad Faith Case and, therefore, were not entitled to an award of attorneys' fees in quantum meruit, was not against the weight of the evidence but was clearly supported by the evidence. Point II is denied.[4]

**Point III Sternberg's Contract Extended to the Bad Faith Case**

In Point III, Appellants contend the trial court's finding that Sternberg did not have an existing contingency fee contract as of January 17, 2018 was against the weight of the evidence. Appellants argue that, while Sternberg's representation of Estes in the appeal of

---

[4] In their argument under Point II, Appellants assert they have an attorney lien for over $3,000,000 stemming from the original judgment in the Underlying Case, and the combination of the May 2017 settlement of the Underlying Case and the judgment in the Bad Faith Case extinguishes their right to pursue this lien under Section 484.140. Like their attorney lien statute issue raised only in their argument under Point I, *see footnote 3*, this issue was not raised in their point relied on and will not be addressed.

18

the Underlying Case was ongoing, he and Estes expressly amended their agreement to include, as payment for his work on that appeal, 2.5% of the gross proceeds of the Bad Faith Case. Appellants claim the amended agreement establishes Sternberg's entitlement to 2.5% of the *entire* legal fee, despite his acceptance of 5% of the settlement awarded in the Underlying Case.

Once again, while setting forth the analytical framework for an against the weight of the evidence challenge, Appellants' failure to follow the applicable framework means their argument is fatal to this point. *Langston*, 615 S.W.3d at 116.

We again choose to review the point *ex gratia*. In Sternberg's original contract for legal services, executed on October 12, 2015, Estes agreed to pay Sternberg "a percentage fee contingent on the outcome of the Case." Paragraph 1 of the contract stated that "the Case" refers to "*Doe v. Prog. Cmty. Servs.,*" which the contract specifically notes was on appeal from the Buchanan County Circuit Court in Case No. 13BU-CV05586, to the Missouri Court of Appeals, Western District in Case No. WD79064. Paragraph 3 also provided that "Mr. Sternberg's Contingent Fee" was from Briscoe's contingency fee agreement with Estes "on the full proceeds of any judgment or settlement collected in this matter." Paragraph 3 further provided:

> If the result of the consolidated appeal and cross-appeal before the Court of Appeals or the Supreme Court is a mandate affirming the existing judgment in the Case or a reversal and remand on Ms. Estes's and her granddaughter's cross-appeal, or if Ms. Estes settles the Case after Mr. Sternberg has filed the brief of the respondents and cross-appellants in the Court of Appeals, and if Ms. Estes collect[s] after such a mandate or settlement, Ms. Briscoe will pay to Mr. Sternberg five percent (5%) of the gross amount of award or settlement collected, including any authorized pre-judgment or post-judgment interest. The payment from Ms. Briscoe to Mr.

19

Sternberg will be out of the twenty-six percent (26%) to which Ms. Briscoe is entitled.

On September 11, 2016, Estes, Briscoe, and Sternberg signed an amendment to Sternberg's original contract for legal services. In the amendment, the parties acknowledged that on October 12, 2015, they had signed a contract for legal services that "outlines the duties, responsibilities, and contingency fee agreement involved in the appeal of *Doe v. PCS*, Circuit Court Case No. 13BU-CV05586 – Missouri Court of Appeals, Western District Case No. 79064." The amendment stated that it affected only Paragraph 3, "Mr. Sternberg's Contingent Fee." The amendment provided:

> Brenda Estes agrees that Mr. Sternberg's five percent (5%) of the gross amount of award or settlement collected, including any authorized pre-judgment interest or post-judgment interest, shall be paid from [Jane Doe]'s portion of the award or settlement collected and not from any amount that Rose Briscoe is entitled to collect for her fees based on Rose Briscoe's contingency fee agreement with Brenda Estes, which was entered into on January 9, 2014.

At the same time that Estes, Briscoe, and Sternberg executed this amendment, they signed an email from Presley & Presley delineating that its attorneys' fees would be one-third of the total attorneys' fees if the case were resolved before a bad faith claim was filed and 50% of the total attorneys' fees after a bad faith claim was filed. Beside the paragraph setting out what Presley & Presley's fees would be if the case were resolved before a bad faith claim was filed, Briscoe had handwritten in the margin that her attorneys' fees were 40%, and Sternberg's were 5%.

Appellants argue the amendment to Sternberg's contingent fee contract and the Presley & Presley email served to clarify Sternberg's existing contingent fee arrangement.

20

Specifically, Appellants contend that, "[b]ecause it was understood at all times that MOPERM's policy limits were $2 million and so a 'bad faith' collection action would be necessary to collect the rest [of the original $9,000,000 judgment or $8,000,000 amended judgment], it was also understood that the 5 percent extended to that collection." They assert Estes confirmed this in the Presley & Presley email, "though limiting Mr. Sternberg's contingent percentage for the 'bad faith' collection to half of what it had been until then, 2.5 percent," due to their agreement that Presley & Presley would be entitled to the other half. We disagree.

Presley & Presley's email delineating its fees did not amend the scope of representation of Sternberg's original contract for legal fees or the September 11, 2016 amendment to that contract. The Underlying Case was the only case mentioned in those documents – and the scope of services specifically set out in Sternberg's contract for legal services stated he was solely providing services for the appeal of the Underlying Case. Sternberg's contract stated that, for his services, Estes was to pay him "a percentage fee contingent on the outcome of the Case." The contract expressly defined "the Case" as the Underlying Case. Appellants point to no language in either document that contemplates a bad faith cause of action. It is clear that it was the recovery of the settlement in the Underlying Case alone that triggered Estes's obligation to pay Sternberg his 5% contingent fee, and his contract for legal services was satisfied upon that payment.

The circuit court's finding that Sternberg did not have an existing contingency fee contract as of January 17, 2018, was not against the weight of the evidence. Point III is denied.

21

## CONCLUSION

The judgment is affirmed.

_____
Gary D. Witt, Judge

All Concur.